# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10192

UNITED STATES OF AMERICA, ex rel. DARILYN JOHNSON,

Plaintiff–Appellant,

v.

KANER MEDICAL GROUP, P.A.; DAVID KANER,

Defendants–Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-CV-757

Before PRADO, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Darilyn Johnson, a former employee of Defendants–Appellees Kaner Medical Group, P.A., and its owner David Kaner (collectively, "KMG"), filed this qui tam action under the False Claims Act ("FCA"), alleging that KMG presented fraudulent claims for reimbursement to the Government and that KMG improperly terminated her in retaliation for investigating the company's alleged FCA violations. The district court sua sponte granted summary judgment in favor of KMG. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10192

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kaner Medical Group, P.A., provides health care services to patients out of its two locations in Bedford and Euless, Texas. KMG is under the sole ownership of David Kaner. Relator Darilyn Johnson began working in the billing department of KMG in April 2012 and was primarily responsible for collecting outstanding patient accounts.

### A.   KMG's Allergy Clinic and Billing Practices

This suit arises out of services performed at KMG's allergy clinic for patients enrolled in Medicare and TRICARE.[1] Patients are referred to the allergy clinic by either a physician, a physician's assistant, or a nurse practitioner employed by KMG. Three medical assistants, none of whom are licensed medical providers in the State of Texas, administer allergy testing and allergen immunotherapy services at the clinic.

In order to be reimbursed, the Centers for Medicare and Medicaid Services ("CMS") require health care providers to submit a claim form with detailed information about the patient, provider, and the services performed. To submit a claim, the health care provider uses his or her  National Provider Identifier ("NPI"), which is a unique ten-digit number. Only licensed health care providers have an NPI. Reimbursable services may be delegated to an unlicensed medical assistant so long as the assistant is directly supervised by a provider with a valid NPI. Providers can then bill for these delegated services under their own NPI.

---

[1] TRICARE is the health care provider for the U.S. military. *About Us*, TRICARE, http://tricare.mil/About.aspx?utm_source=footer&utm_medium=organic&utm_campaign=about-us (last updated Sept. 30, 2015).

No. 15-10192

At the time Johnson was employed, KMG used a specific form to submit claims for reimbursement—Form 1500.[2] This form includes a box for the referring provider's NPI and a separate box for the rendering provider's NPI. Instructions provided by CMS confirm that in KMG's case, the referring provider would be the physician, physician's assistant, or nurse practitioner that referred the patient to the allergy clinic, and the rendering provider would be the physician, physician's assistant, or nurse practitioner supervising the allergy clinic on the day the patient received the service. At the time of this suit, KMG's practice was to place the referring provider's NPI and electronic signature in both the rendering and referring provider boxes, regardless of who was actually on site at the allergy clinic to supervise the day the services were performed.

## B.     Johnson's Termination

On June 18, 2012, Johnson sent an e-mail to two of her supervisors expressing concerns about KMG's billing and collection practices. In her e-mail, Johnson claimed that KMG had improperly billed Medicare–Medicaid patients directly, which she alleged was "against the law." On June 26, 2012, Johnson sent a second e-mail to one of her supervisors about a refund she believed was due to a specific Medicaid patient that had been directly billed. That same day she was asked into her supervisor's office and shown several "employee counseling notices" that summarized patient complaints about her job performance. Johnson was then dismissed from KMG.

## C.     The FCA Suit

Johnson filed a qui tam suit under the FCA against KMG and Kaner on October 25, 2012. The Government chose not to intervene in Johnson's suit.

---

[2] TRICARE also uses Form 1500. Johnson does not point to any TRICARE regulations, guidelines, or instructions that prohibit KMG's practice of placing the referring provider's NPI in the rendering provider box.

3

No. 15-10192

After several years of discovery, the district court sua sponte granted summary judgment in favor of KMG on all three counts alleged in Johnson's Second Amended Complaint and dismissed the suit. This appeal involves two of those claims.

First, Johnson alleges that KMG violated 31 U.S.C. § 3729(a)(1)(A), arguing that it submitted false claims for reimbursement to Medicare and TRICARE. To support this argument, Johnson contends that KMG's practice of using the referring provider's NPI number regardless of which provider actually supervised the services is a false claim for payment submitted to the Government. Second, she alleges that she was terminated in retaliation for raising concerns about KMG's billing practices in violation of 31 U.S.C. § 3730(h) because she began asking questions and voicing concerns about KMG's billing practices related to its Medicare–Medicaid patients.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this suit under 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Summary judgment may be granted by a district court sua sponte if proper notice is given and the parties are afforded a reasonable time to respond. Fed. R. Civ. P. 56(f). This Court reviews a district court's grant of summary judgment de novo, viewing "all facts and evidence in the light most favorable to the non-moving party." *Amerisure Mut. Ins. Co. v. Arch Specialty Ins. Co.*, 784 F.3d 270, 273 (5th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

No. 15-10192

## III. DISCUSSION

Under the FCA, private parties can bring suit against any person that has submitted false claims for payment to the U.S. Government and are entitled to collect a portion of the civil penalty and damages recovered. 31 U.S.C. §§ 3729(a), 3730(b)(1), (d). The suit is brought in the Government's name, and the Government has the exclusive opportunity to intervene. *Id.* § 3730(b)(1), (4)–(5). But, if the Government does not intervene, the qui tam provision of the statute allows the private party to prosecute the suit on the Government's behalf. *Id.* § 3730(c)(3). "The FCA is not a general 'enforcement device' for federal statutes, regulations, and contracts." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997)). Instead, the statute serves as "the Government's 'primary litigation tool' for recovering losses resulting from fraud." *Id.* at 267 (quoting *United States ex rel. Marcy v. Rowan Cos.,* 520 F.3d 384, 388 (5th Cir. 2008)).

### A.    Submission of False Claims under 31 U.S.C. § 3729(a)(1)(A)

Any person that "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government is liable under the FCA. 31 U.S.C. § 3729(a)(1)(A). Generally, there are four elements that must be met to succeed in a qui tam action under § 3729(a)(1)(A): "(1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). The district court granted summary judgment in favor of KMG on Johnson's § 3729(a)(1)(A) claim reasoning that Johnson failed to meet elements two and three of this test.

Under the FCA, "a lie is actionable but not an error." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Therefore, liability does not attach unless "the [defendant] knowingly asks the Government to pay amounts it does not owe." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 381 (5th Cir. 2003). The False Claims Act defines "knowing" and "knowingly" as follows:

> (1) the terms "knowing" and "knowingly"–
> > (A) mean that a person, with respect to information–
> > > (i) has actual knowledge of the information;
> > > (ii) acts in deliberate ignorance of the truth or falsity of the information; or
> > > (iii) acts in reckless disregard of the truth or falsity of the information; and
> > (B) require no proof of specific intent to defraud

31 U.S.C. § 3729(b)(1)(A)–(B). This is an elevated standard, as a finding of negligence or gross negligence is not sufficient to satisfy the scienter requirement. *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 338 (5th Cir. 2008). "Given this definition of 'knowingly,' courts have found that the mismanagement—alone—of programs that receive federal dollars is not enough to create FCA liability." *Id.* at 339; *see also Willard*, 336 F.3d at 381 (explaining that liability attaches to a false claim for payment not "a health care provider's disregard of Government regulations or improper internal policies"). As a result, to survive summary judgment, Johnson must raise a genuine dispute of material fact that KMG acted with either 1) actual knowledge, 2) deliberate ignorance, or 3) reckless disregard.

Assuming, as the district court did, that KMG actually submitted false claims for payment to the Government by incorrectly filling out Form 1500, none of Johnson's arguments raise a genuine dispute of material fact that KMG acted with the requisite mental state required under the statute. She has presented no summary judgment evidence on which a reasonable jury could

find that KMG acted with actual knowledge, deliberate ignorance, or reckless disregard. Rather, the record indicates that, at most, KMG's misunderstanding of CMS's requirements was negligent, which is not sufficient to attach liability under the FCA. *See Farmer*, 523 F.3d at 338.

Because Johnson has failed to raise a genuine dispute of material fact that KMG had the requisite scienter—actual knowledge, deliberate ignorance, or reckless disregard—in submitting reimbursement claims to Medicare and TRICARE, we affirm the district court's grant of summary judgment on Johnson's § 3729(a)(1)(A) claim. As such, we need not address Johnson's arguments related to the issue of materiality.

## B.    Retaliation Under 31 U.S.C. § 3730(h)(1)

The False Claims Act provides a cause of action for employees that experience adverse employment actions in response to their activities "in furtherance of an [FCA] action" or their "efforts to stop 1 or more violations" of the FCA. 31 U.S.C. § 3730(h)(1). "The 'whistleblower' provision of the False Claims Act prevents the harassment, retaliation, or threatening of employees who assist in or bring *qui tam* actions" and "is intended to encourage[s] those with knowledge of fraud to come forward." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). To survive summary judgment on this claim, Johnson must raise a genuine dispute of material fact that 1) she engaged in protected activity, 2) KMG knew she engaged in that activity, and 3) she was terminated as a result of her engagement in that activity. *See* 31 U.S.C. § 3730(h).

To qualify as protected activity under the whistleblower provision, the activity must be "in furtherance of" uncovering fraud or potential fraud against the Government. 31 U.S.C. § 3730(h)(1); *see also Robertson*, 32 F.3d at 951. Johnson argues that the two e-mails she sent to her supervisors raising concerns about KMG's billing practices in June 2012 qualify as protected

activity under the whistleblower provision. But, the concerns Johnson raised to her supervisors involved the direct billing of Medicare–Medicaid patients. While both of those programs are Government run, Johnson has failed to demonstrate how her actions investigating this practice were in furtherance of uncovering or preventing fraud against the Government. At oral argument, Johnson argued that her activity was protected under the FCA because the Government has an interest in the proper billing of their Medicare–Medicaid patients. But, in directly billing Medicare–Medicaid patients, KMG was not presenting any false claim for payment to the Government. Instead, it was seeking payment from the patients themselves. Because Johnson has failed to adequately show how directly billing Medicare–Medicaid patients relates to the presentation of false claims for payment to the Government, she has failed to raise a genuine dispute of material fact that she engaged in protected activity under the FCA.

Therefore, we affirm the district court's grant of summary judgment on her retaliation claim. As a result, we decline to reach Johnson's arguments related to the second and third elements of this claim.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.